**NOT FOR PUBLICATION**                                                                **CLOSED**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCINE COLE, individually and as co-administrator of the Estate of Bevelyn D. Cole,<br><br>Plaintiff,<br><br>v.<br><br>GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,<br>                    Defendant. | Civil Action No. 11-1026 (JLL)<br><br><br>**OPINION** |

**LINARES,** District Judge**.**

This case concerns the death of Bevelyn D. Cole.  Her sister, Francine Cole, brings this suit pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, challenging Defendant Guardian Life Insurance Company of America's non-payment of an accidental death benefit following Bevelyn's death.  Defendant Guardian has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard.  Fed. R. Civ. P. 78.  Based on the reasons that follow, Defendant's motion [Docket Entry No. 56] is **granted**.

## **BACKGROUND**

The following relevant facts are not in dispute unless noted otherwise.

A.   *The ERISA Plan*

During all relevant times, Bevelyn Cole was employed at the Bonnie Brae School ("BBS"). (Def. 56.1 Stmt., ¶ 2); (Pl. Response, ¶ 2). Guardian provides Basic Group Term Life Insurance and Basic Accidental Death benefits to eligible employees of the Bonnie Brae School under the Bonnie Brae Group Insurance Plan ("the Plan"). (*Id*.). Thus, there are two life insurance components to the Plan: (1) a Basic Life benefit, and (2) an Accidental Death benefit. The Plan is an employee welfare plan governed by ERISA, 29 U.S.C. § 1001, et seq. (*Id.*, ¶ 4). Guardian is a fiduciary of the Plan established by BBS with respect to claims administration and is conferred discretionary authority to interpret the terms of the Plan and to determine eligibility for Basic Life and Accidental Death claims. (*Id*., ¶ 5).

The Plan provides that benefits will be paid to a beneficiary and explains who is a beneficiary of the Basic Life and Accidental Death Insurance. (*Id*., ¶ 10). It provides:

> **Your Basic Group Term Life Insurance**
> Basic Life Benefit
> If you die while insured for this benefit, we will pay your beneficiary the amount shown in the schedule.
>
> **Your Beneficiary**
> You decide who gets this insurance if you die. You should have named a beneficiary on your enrollment form. You can change your beneficiary at any time by giving your employer written notice, unless you have assigned the insurance. But the change will not take effect until the employer gives you written confirmation of the change.
>
> If you named more than one person, but did not tell us what their share should be, they will share equally. If someone named dies

> before you do, his or her share will be divided equally by the beneficiaries still alive, unless you have told us otherwise.
>
> \*\*\*
>
> **Your Basic Accidental Death and Dismemberment Benefits**
>
> **Benefit Amounts**
>
> For covered loss of life, we'll pay the full amount shown in the schedule for the plan you have elected, to the same beneficiary who gets your employee group term life insurance.

(*Id*., ¶ 10).

For payment of Basic Life and Accidental Death benefits, the Plan provides the following:

> **Your Benefit**
> We'll pay the benefits described below if you suffer a covered loss due to an accident that occurs while you are insured.
>
> \*\*\*
>
> **Covered Losses**
> Covered Loss means (a) loss of life; or (b) single dismemberment; or (c) multiple dismemberment.  The loss must be the direct result of an accident which occurs while you are insured, independent of all other causes.  And it must occur within 90 days of the accident.
>
> \*\*\*
>
> But we won't pay benefits for losses we exclude below.

(*Id*., ¶ 11).  The Plan goes on to list various exclusions, including but not limited to "loss caused directly or indirectly" by "intentional self-injury," "disease of any kind" and/or "by infection, except septic infection." (*Id*., ¶ 12).

In addition, the Plan provides specific limitations on assignment of benefits.  (*Id.,* ¶ 13). It provides: "[i]f you assign this insurance, you permanently transfer all of your rights under this

insurance to the assignee." It further provides that "[w]e will recognize an assignee as the owner of the rights assigned only if: (a) the assignment is in writing and signed by you; and (b) a signed or certified copy of the written assignment has been received and approved by us." (*Id.*).

The "Life and Accidental Death and Dismemberment Insurance Claims Procedure" section of the Plan sets forth basic procedures Guardian follows when administering a Basic Life or Accidental Death claim. It states, in pertinent part:

> (a) If a claim is wholly or partially denied, the claimant will be notified of the decision within 90 days after Guardian received the claim.
> (b) If special circumstances require an extension of time for processing the claim, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period. . . .
> (c) If a claim is denied, Guardian will provide a notice . . . . A claimant must file a request for review of a denied claim within 60 days after receipt of written notification of denial of a claim.
> (d) Guardian will notify the claimant of its decision within 60 days of receipt of the request for review. . .

(*Id.*, ¶ 6).

B.  *Decedent's Enrollment, Designation of Beneficiaries and Death*

Decedent became eligible for benefits under the Plan as an employee of BBS following her completion of an Enrollment Form on September 2, 2004. (*Id.*, ¶ 16). The Enrollment Form—the authenticity of which is disputed by Plaintiff—designates Joseph Cole and George Johnson as decedent's beneficiaries under the Plan and noted that they were her nephews. (*Id.*, ¶ 20). Defendant maintains that the decedent never sought to change her beneficiary designation and that this designation remained in effect at the time of decedent's death. (*Id.*, ¶ 21). Moreover, it is undisputed that the decedent did not assign her right as owner of the Basic Term Life insurance and/or Basic Accidental Death insurance, nor was any such assignment ever

submitted to Guardian in writing, signed by the decedent, and received and approved by Guardian. (*Id.*, ¶ 14).

On October 9, 2007, Guardian received notice that decedent had died on June 19, 2005. (*Id.*, ¶ 22). Notice was provided by way of an undated handwritten correspondence from Plaintiff. (*Id.*, ¶ 23). The letter advised that Plaintiff was decedent's sister, that decedent's death was being investigated, and made allegations of fraud. (*Id.*, ¶¶ 24-25). Included within that correspondence was an "Administration Short Certificate" issued by the Morris County Surrogate's Court which granted "Letters of Administration" of decedent's estate to Gwendolyn Cole Hoover and Plaintiff, Francine Cole, as administrators of the estate. (*Id.*, ¶ 26). This document states that "THESE LETTERS AUTHORIZE A COLLECTION OF A TOTAL OF [$]4,000.00. THE COLLECTION IN EXCESS OF THAT AMOUNT MUST BE AUTHORIZED BY A FURTHER JUDGMENT OF THE SURROGATE UPON THE FILING OF AN ADDITIONAL BOND." (*Id.,* ¶¶ 27-29); (Mortimer Aff., Ex. 4).

On October 29, 2007, Guardian received correspondence from Plaintiff indicating that "the estate may file an action to override the beneficiaries to place the funds into a trust account until they reach a certain age" and requesting that Guarding "refrain from processing a death claim at this time." (Def. Stmt., ¶ 33); (Pl. Responsive Stmt., ¶ 33). On December 27, 2007, Guardian received correspondence from Plaintiff indicating that, as co-administrator of the Estate, she was contesting the signature on the Enrollment Form and further requesting that Guardian withhold any benefits payable. (*Id.*, ¶ 34). On January 9, 2008, Guardian wrote a letter to Plaintiff inquiring as to whether the Estate would be submitting a claim for the proceeds payable under the Plan and if the Estate was commencing an action to override the beneficiaries. (*Id.*, ¶ 35). On January 14, 2008, Guardian received correspondence from Plaintiff stating that

the "Estate is not submitting a claim for proceeds at this time." (*Id.*, ¶ 36); (Mortimer Aff., Ex. 8). Plaintiff never filed a claim for benefits under the Plan on her own behalf or on behalf of the Estate. (Def. Stmt., ¶¶ 32, 37); (Pl. Responsive Stmt., ¶¶ 32, 37).[1]

C.  *Basic Life Benefit*

Given the death of the decedent and Guardian's receipt of her death certificate, Guardian became obligated to pay the Basic Life benefit in the amount of $69,000.00. (Def. Stmt., ¶ 58); (Pl. Responsive Stmt., ¶ 58). On December 13, 2007, Guardian received two Group Life Claim Forms signed by beneficiary George Johnson Cole and Joseph B. Cole, respectively. (*Id.*, ¶¶ 53,

---

[1] Although Plaintiff indicates "Disagreement" with paragraphs 32 and 37 of Defendant's 56.1 Statement of Uncontested Material Facts, Local Civil Rule 56.1 provides, in pertinent part as follows: "The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, **if not agreed, stating each material fact in dispute and citing to the affidavits and other documents** submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." In support of her "disagreement" with paragraph 32, Plaintiff states that "the subject letter included proof that Francine Cole was a general administrator of the Estate [and] indicated she was acting on behalf of the Estate." Similarly, in support of her disagreement with paragraph 37, Plaintiff states that "Defendant acknowledged that the Plaintiff was pursuing a claim by way of the Complaint in Interpleader and should be estopped from arguing otherwise." But paragraphs 32 and 37 of Defendant's 56.1 Statement provide that "Cole never filed a claim for benefits under the Plan on her behalf or on behalf of the Estate" and that "no claim was ever submitted on behalf of the Estate for the proceeds payable under the Plan," respectively. Thus, Plaintiff's responsive statements do not directly address the crux of paragraphs 32 or 37 of Defendant's 56.1 Statement, do not expressly disagree with their contents, nor does Plaintiff cite to evidence in the record in support of the proposition that Plaintiff *did* file a claim for benefits under the Plan on her own behalf or on behalf of the Estate. Thus, paragraphs 32 and 37 of Defendant's 56.1 Statement are hereby deemed admitted. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

54).  On July 8, 2008, Guardian filed a civil action in the United States District Court for the District of South Carolina seeking Interpleader relief regarding the Basic Life benefit, and joining Plaintiff, the Estate, the co-administrator of the Estate and the beneficiaries designated under the terms of the Plan as defendants. (*Id*., ¶ 59).  Guardian subsequently deposited the Basic Life benefit in the amount of $69,000.00 into a court account and, on November 17, 2008, an Order was entered in the context of the South Carolina action granting Guardian's motion for Interpleader relief, releasing and discharging Guardian from all claims, causes of action and further liability for the payment of the Basic Life benefit payable as a result of decedent's death. (Def. Stmt., ¶¶ 59-63); (Pl. Stmt., ¶¶ 59-63).  The Interpleader action was ultimately resolved by way of an Order entered on March 6, 2009, wherein the South Carolina Court also approved a settlement reached by the parties. (*Id*.). According to Plaintiff, under the terms of the settlement agreement, the parties—George Johnson, Joseph Cole and Francine Cole—agreed that there would be a one-third equal division of the basic life benefit and of the accidental death benefit, "should Guardian approve the insurance claim for the Accident Death Benefit portion of the policy." (Pl. Opp'n Br. at 5).  Having already been dismissed from the action, Guardian was not a party to the March 2009 settlement. (Def. Stmt., ¶¶ 59-63); (Pl. Stmt., ¶¶ 59-63).

D. *Accidental Death Benefit*

Between July and January 2009, Guardian sent several letters to the beneficiaries regarding the Accidental Death Benefit and noting that additional information was needed to make a determination on whether the Accidental Death benefit was payable under the Plan. (Def.

Stmt., ¶¶ 67, 79, 84); (Pl. Responsive Stmt., ¶¶ 67, 79, 84, 93).[2] To date, Guardian has received no medical records from the two individuals listed as beneficiaries on decedent's Enrollment Form, namely, Joseph Cole and/or George Johnson. (*Id.*, ¶ 69).[3]

Guardian requested toxicology and autopsy reports and medical records from facilities where decedent was treated prior to her death, including Newark Beth Israel Medical Center and Morristown Memorial Hospital. (*Id.*, ¶¶ 71, 72). Morristown Memorial Hospital responded with a request that a specific authorization form be executed by the next of kin listed on the death certificate, Gwendolyn Hoover. (*Id.*, ¶ 72). Guardian maintains that it sent various requests to

---

[2] Although Plaintiff indicates "disagreement" with paragraph 67 of Defendant's 56.1 Statement, Plaintiff offers no meaningful basis for her disagreement with the contents of said statement, nor does she cite to any evidence in the record to support her position. For instance, Plaintiff does not expressly dispute that said letter was sent to the two individuals listed as beneficiaries on decedent's Enrollment Form. (Mortimer Aff., Ex. 22). Rather, Plaintiff, in essence, challenges her characterization as a non-beneficiary. But Plaintiff offers no evidence in support of the proposition that she was designated as a beneficiary by the decedent. Nor does Plaintiff offer any evidence in support of the notion that the Enrollment Form submitted as Exhibit 2 to the Mortimer Affidavit is not authentic. Local Civil Rule 56.1 requires citation to evidence in the record in support of any statement "not agreed." Having failed to cite to any evidence in the record to contradict paragraph 67 of Defendant's 56.1 Statement, said paragraph is hereby deemed admitted. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

[3] Again, Plaintiff indicates "disagreement" with paragraph 69 of Defendant's 56.1 Statement, but offers no meaningful basis for her disagreement and cites to no specific evidence in support of the proposition that either Joseph Cole or George Cole—the two individuals listed as beneficiaries in decedent's Enrollment Form—have submitted medical records to Guardian pursuant to Guardian's July 2008 request. Having failed to cite to any evidence in the record to support her position, said paragraph is hereby deemed admitted. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

Gwendolyn Hoover for the necessary authorization to obtain decedent's medical records between July and November 2008, to no avail. (*Id.*, ¶¶ 73, 81, 88).

Following a complete review of the circumstances of decedent's death and the absence of any evidence indicating that the death was a covered loss due to an accident as required under the terms of the Plan, on February 23, 2009, Guardian issued its initial decision denying the claim for the Accidental Death benefit under the Plan. (Def. Stmt., ¶ 95). Plaintiff does not dispute that such decision was made, but rather disputes that said decision was properly mailed to all necessary parties. (Pl. Responsive Stmt., ¶ 95).

C.   *Plaintiff's Complaint*

In light of the foregoing, Plaintiff now asserts a claim for Accidental Death benefits due under the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). To be clear, the sole claim asserted in this matter relates to the Accidental Death benefit portion of the policy and has no direct bearing on the Basic Life benefit portion of the policy that was indisputably paid out by Guardian in November 2008 in connection with the South Carolina Interpleader Action.

**LEGAL STANDARD**

A.  *Summary Judgment*

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

B.  *Claim for ERISA Benefits Under § 1132(a)(1)(B)*

Claims by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" fall within the civil enforcement provisions of ERISA. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271–72 (3d Cir. 2001) (quoting 29 U.S.C. § 1132(a)(1)(B)).

An ERISA benefits denial is reviewed using a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the administrator is vested with discretionary authority, "a deferential standard of review [is] appropriate;" a reviewing court is limited to determining whether the administrator abused its discretion.[4] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (quoting *Firestone*, 489 U.S. at 115). In this regard, the Third Circuit has explained that "courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009). If the plan language is plain, then "actions taken by the plan administrator inconsistent with [those] terms ... are arbitrary." *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001).

ERISA does not, however, "entitle a participant to benefits whenever the administrator behaves arbitrarily; rather, it entitles him to benefits whenever 'the terms of his plan' so provide." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1167-68 (3d Cir. 1990) (citing ERISA § 502(a)(1)(B)).

With this framework in mind, the Court turns now to Defendant's motion.

---

[4] *See Estate of Schwing*, 562 F.3d at 526 n. 2 ("Our prior caselaw referenced an 'arbitrary and capricious' standard of review, while Glenn describes the standard as 'abuse of discretion.' We have recognized that, at least in the ERISA context, these standards of review are practically identical.").

## ANALYSIS

Defendant moves for summary judgment on three (3) grounds: (1) Plaintiff lacks standing to bring this action, (2) this action is barred as a result of failure to exhaust the administrative remedies set forth in the Plan, and (3) the claim determination was not arbitrary or capricious. Thus, although the parties raise a number of important issues, as a threshold matter, the Court must determine whether Plaintiff has standing to bring a claim for benefits under the Plan.

**1.     Standing**

Defendant moves for summary judgment on the basis that Plaintiff, decedent's sister, is neither the Plan participant, nor the Plan beneficiary; thus, it is Defendant's position that Plaintiff lacks standing to sue for benefits allegedly due under the Plan under ERISA.

"To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing." *Leuthner v. Blue Cross and Blue Shield of Ne. Pennsylvania*, 454 F.3d 120, 125 (3d Cir. 2006). "[T]he language of § 502(a)(1) sets forth the standing requirements to bring such an action—both prudential and statutory standing: In that sense, the "zone of interest" inquiry in the prudential standing analysis for § 502(a)(1) claims is inextricably tied to the question of whether a plaintiff can meet the definitions of either a "participant" or "beneficiary." *Id*. Thus, "ERISA's statutory standing requirements are a codification of the 'zone of interest' analysis." *Id.* at 126.  Standing is not, however, a "mere pleading requirement[,] but rather an indispensable part of the plaintiff's case, each element [of which] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Miller v. Rite Aid Corp.*, 334 F.3d 335, 343 (3d Cir. 2003) (internal quotations omitted).

Pursuant to § 502(a) of ERISA, "a participant or beneficiary" may bring a civil action to, *inter alia*, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). It is clear, therefore, that standing to sue under the statute is "limited to participants and beneficiaries." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004); *see also Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991) ("[I]n the absence of some indication of legislative intent to grant additional parties standing to sue, the list in § 502 should be viewed as exclusive."); *Ne.Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 (3d Cir. 1985) ("Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf.").

"The term 'participant' means any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . ." *Miller v. Rite Aid Corp.*, 334 F.3d 335, 341 (3d Cir. 2003) (citing 29 U.S.C. § 1002(7)). Plaintiff does not argue, nor is there any evidence in the record suggesting, that she is or ever was an employee of Bonnie Brae School who was eligible to receive benefits under the Bonnie Brae Group Insurance Plan.

A "beneficiary" under ERISA "means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). It is Plaintiff's position that, under the terms of the March 2009 settlement agreement entered into by Plaintiff, Joseph Cole and George Johnson, Plaintiff, both individually and as co-administrator of the estate of the decedent, became a beneficiary of the Plan. (Pl.

13

Opp'n Br. at 5). In particular, Plaintiff states that pursuant to the March 2009 settlement agreement: (a) the parties—George Johnson, Joseph Cole and Francine Cole—agreed that there would be a one-third equal division of the basic life benefit and of the accidental death benefit, "should Guardian approve the insurance claim for the Accident Death Benefit portion of the policy," and (b) she was "acknowledged" by the South Carolina Court and without objection by the Defendant, "to have a beneficial interest in the payment of the Accidental Death Benefit.

A. *Discussion*

As a general matter, the Court agrees with Defendant that ERISA "obligates administrators to manage ERISA plans 'in accordance with the documents and instruments governing' them." *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan,* 555 U.S. 285, 287-288 (2009) (quoting § 1104(a)(1)(D)). Plaintiff's claim for benefits "therefore stands or falls by 'the terms of the plan,' § 1132(a)(1)(B), a straightforward rule of hewing to the directives of the plan documents that lets employers " 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.' " *Id*. at 300. "The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.' " *Id*. at 301.

In opposition to Defendant's properly supported motion for summary judgment, Plaintiff does not dispute that: (a) she is not (and was not) the Plan participant, and (b) her name is not listed as a beneficiary in the Enrollment Form signed by the decedent and attached as Exhibit 2

14

to Mortimer's Affidavit. Rather, Plaintiff relies on two arguments to assert that she, nevertheless, has standing to pursue a claim for benefits under the Plan: (1) "the authenticity of the enrollment form is in dispute,"[5] and (2) she acquired beneficiary status by virtue of a settlement agreement entered into in the context of the South Carolina Interpleader action. The Court will address each argument, in turn.

### i. *Authenticity of the Enrollment Form*

In support of the argument that the Enrollment Form, submitted as Exhibit 2 to the Mortimer Affidavit, is not "authentic," Plaintiff cites, generally, to Exhibits A through E of Defendant's Counsel's Certification. As a preliminary matter, the Court notes that it is Plaintiff's responsibility to cite to the specific evidence in the record that supports her claim and/or arguments. Citing generally to Exhibits A through E is unacceptable. It is not the Court's responsibility to sift through Plaintiff's submissions in an attempt to find evidence which supports her claims. *See, e.g., Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.,* 309 F.3d 433, 436 (7th Cir.2002) (" 'Judges are not like pigs, hunting for truffles buried in' the record.").

Moreover, Exhibits A through E of Roselini's Certification—which are comprised of the Certification of Gwendolyn Cole-Hoover and accompanying documents (together, the "Hoover Certification")—are not properly before the Court inasmuch as Magistrate Judge Hammer ruled that "the parties are limited to the administrative record." *See* Docket Entry No. 51 at 22. Plaintiff does not dispute that the Hoover Certification is *not* a part of the administrative record in this case, nor does Plaintiff dispute that Magistrate Judge Hammer considered the Hoover Certification and nevertheless denied Plaintiff's request to seek/introduce materials beyond the

---

[5] *See* Pl. Responsive Stmt., ¶¶ 16-21.

15

administrative record. *See id.* (denying plaintiff's motion to compel and finding that Plaintiff had failed to make a sufficient showing of bias or conflict of interest to warrant additional discovery); December 18, 2012 Order, Docket Entry No. 54. Defendant's motion to strike the Hoover Certification [Docket Entry No. 66] is, therefore, granted.[6]

On the other hand, Defendant has submitted an Affidavit by Roberta Mortimer, Chief Adjudication & Procedural Specialist of Group Life/DI Claims with Guardian, wherein she states, *under oath*, that the Enrollment Form submitted as Exhibit B to her Affidavit is the actual form completed by the decedent. *See* Mortimer Aff., ¶ 12. In light of the foregoing evidence—or absence thereof—the Court finds that no reasonable juror could conclude that the Enrollment Form submitted as Exhibit 2 to the Mortimer Affidavit is not authentic.

---

[6] Even if the contents of the Hoover Certification *were* properly before the Court, the Court has reviewed same and finds that it fails to contain any evidence to support the assertion that the Enrollment Form submitted by Defendant is not authentic. Exhibit A is a letter, dated July 25, 2008, from Guardian to Gwendolyn Hoover, another sister of the decedent, who, according to this letter was listed as next of kin on decedent's death certificate. This letter states that "[b]ecause you were listed as the next of kin, we are asking you to complete the enclosed authorization form." (Roselini Cert., Ex. A). Exhibit B contains two letters, dated September 27, 2008 and November 3, 2008, respectively, from Guardian to Gwendolyn Hoover again requesting that she "complete the enclosed authorization form." (*Id.*, Ex. B). Both beneficiaries designated on the Enrollment Form were copied on the foregoing letters from Guardian to Gwendolyn Hoover. Finally, Exhibit B also contains a "Record of Telephone Call" which purports to summarize an incoming call from Gwendolyn Hoover, in pertinent part, as follows: "Gwendolyn told me she received the request letter and would not sign it until all litigation has been completed against the hospital. She said the Estate's attorney has advised her not to sign it." (*Id.*). Exhibit C contains a report, dated October 2006, submitted by Duc Van Duon, M.D., a forensic pathologist, to Gwendolyn Hoover. (*Id.*, Ex. C). The report concludes that "Ms. Bevelyn Cole died of hemorrhagic infarct of brain as a result of the mismanagement of the staff." (*Id.*). Exhibit D contains a "Cardiopulmonary Resuscitation Record" from Morristown Memorial Hospital, dated June 17, 2005. (*Id.*, Ex. D). Exhibit E contains a "Cardiology Mount Sheet" from Atlantic Health System. Simply put, the contents of the Hoover Certification do not address issues related to the authenticity of the Enrollment Form, *whatsoever*.

Thus, it is undisputed that: (a) pursuant to the terms of the Plan, decedent designated the beneficiaries of any benefits to be paid thereunder by virtue of filling out an Enrollment Form,[7] (b) the Enrollment Form completed by the decedent designates Joseph Cole and George Johnson as the decedent's beneficiaries under the Plan,[8] (c) the decedent never changed her beneficiary designation prior to her death,[9] and (d) the decedent never assigned her benefits under the Plan prior to her death.[10] Simply put, it is undisputed that the decedent did not designate the Plaintiff or the decedent's estate as a person "who is or may become entitled to a benefit" under the Plan. *See* 29 U.S.C. § 1002(8) (defining "beneficiary" under ERISA); *see generally Kennedy,* 555 U.S. at 287-288 (explaining that ERISA "**obligates** administrators to manage ERISA plans 'in accordance with the documents and instruments governing' them.") (emphasis added).

      ii.    *The March 2009 Settlement*

To the extent Plaintiff argues that she should, nevertheless, be considered a beneficiary under the Plan by virtue of the March 2009 settlement agreement entered into in the South Carolina Interpleader action, based on the reasons that follow, the Court finds Plaintiff's argument entirely unavailing. First, Plaintiff cites to no binding legal authority for the

---

[7] *See* Def. Stmt., ¶ 10; Pl. Responsive Stmt., ¶ 10 (quoting the following language from the Plan: "You decide who gets this insurance if you die. You should have named a beneficiary in your enrollment form.").

[8] *See* Mortimer Aff., ¶ 12, Ex. 2.

[9] *See* Def. Stmt., ¶ 21; Mortimer Aff., ¶ 12 ("The Decedent never sought to change her beneficiary designation and this designation was in effect at the time of Decedent's death.").

[10] *See* Def. Stmt., ¶ 14; Pl. Responsive Stmt., ¶ 14; Mortimer Aff., ¶ 11 ("The Decedent did not assign her right as an owner of the Life Insurance benefit nor was any such assignment ever submitted to Guardian in writing.").

proposition that standing to sue under ERISA can be acquired by virtue of a settlement agreement.[11] Stated differently, Plaintiff cites to no binding legal authority in support of the theory that the terms of an ERISA plan can be amended by way of a subsequently filed settlement agreement. This is particularly so given that neither the decedent nor Defendant were parties to the settlement agreement, and the South Carolina action pertained to an entirely separate category of life insurance benefits—not to the accidental death benefits at issue in this case. *See Kennedy,* 555 U.S. at 287-288 (noting that a plaintiff's claim for benefits "stands or falls by 'the terms of the plan'").

Moreover, based on evidence in the record and Plaintiff's own representations, there was no finding by the Court in the Interpleader action that Plaintiff and/or the Estate, in fact, are beneficiaries under the Plan, nor was there any admission to that effect by Guardian.[12] To the

---

[11] Some courts have carved out a narrow exception to the ERISA standing requirement by granting standing to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care. *See, e.g., Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001) ("This narrow exception grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."); *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400-401 (3d Cir. 2004) ("The parties dispute whether, under the law of this Circuit, the Hospital can obtain standing under § 502(a) by virtue of an assignment of a claim from a participant or beneficiary. We need not resolve this dispute, however, because there is nothing in the record indicating that Psaras and Rovetto did, in fact, assign any claims to the Hospital."). No such exception is present here.

[12] The Complaint filed in the Interpleader Action provides that "Guardian cannot determine the proper beneficiary of the Basic Life Plan Benefits, and is bringing this lawsuit for interpleader to avoid being vexed and harassed by conflicting and multiple claims." (Ghelli Cert., Ex. A). In doing so, the Complaint does not allege, much less admit, that Francine Cole filed a claim for benefits under the Plan. Rather, the Complaint alleges that Guardian received two claims—one from "Mr. Cole" and one from "Mr. Johnson." (*Id.*, ¶¶ 19, 20). The Complaint also alleges that Guardian received from Francine Cole, *inter alia*, a handwritten undated letter raising allegations of fraud and indicating that the decedent's death was being investigated. (*Id.*, ¶ 25). The Complaint concluded that, "based on the foregoing, there is presently an actual, justifiable

contrary, Plaintiff concedes that the matter was amicably resolved by way of a settlement agreement to which Defendant Guardian was not a party. *See* Pl. Opp'n Br. at 7 ("**_Plaintiff_** . . . resolved the dispute over who is beneficiary with a settlement filed on the record . . . .") (emphasis added).[13]  Thus, Plaintiff's argument that Defendant should be "collaterally estopped" from asserting that Plaintiff and/or the Estate has no standing under ERISA to sue for the accidental death benefits at issue, even if legally permissible, is entirely inapplicable inasmuch as the issue of whether Plaintiff and/or the Estate were beneficiaries under the Plan was not "actually litigated" in the context of the Interpleader action. *See Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995) ("Traditionally, courts have required the presence of four factors before collateral estoppel may be applied: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.").

Having carefully considered the parties' submissions, the Court finds that there is simply no evidence in the record showing that Plaintiff (or decedent's estate) were a Plan participant or designated as beneficiaries under the Plan.  In the absence of such evidence, the Court finds that Plaintiff has failed to meet her burden of establishing, *inter alia*, the threshold requirement of statutory standing.  Accordingly, Plaintiff cannot bring suit under § 502 of ERISA.  *See Leuthner,* 454 F.3d at 125 ("To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing.").  Defendant's motion for summary judgment must therefore be granted. *See, e.g., Simon,* 263 F.3d at 178 (affirming dismissal of claim for

---

controversy as to the Basic Life Benefits, and Guardian as a disinterested stakeholder is entitled to the relief requested herein." (*Id*., ¶ 38).

[13] *See* also Def. Stmt., ¶ 63; Pl. Responsive Stmt., ¶ 63; Ghelli Cert., ¶¶ 8, 9, Ex. E.

benefits under section 502(a)(1)(B) of ERISA where plaintiff was neither a participant nor beneficiary under the relevant ERISA plan, nor was the plaintiff a healthcare provider to whom a beneficiary had assigned his claim in exchange for health care)*; see generally Watson v. Eastman Kodak Co*., 235 F.3d 851, 857-858 (3d Cir. 2000) (quoting *Celotex,* 477 U.S. at 322-23) ("A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial' mandates the entry of summary judgment.").

## CONCLUSION

Based on the reasons set forth above, the Court concludes that Plaintiff Francine Cole does not have standing to bring a civil action under ERISA. Defendant's motion for summary judgment is **granted**. This case is hereby **closed**.

An appropriate Order accompanies this Opinion.

s/ Jose L. Linares
Jose L. Linares
United States District Judge

Date: August 6, 2013